We'll hear argument this morning in Case 22-704, Vidal v. Elster. Mr. Stewart. Thank you, Mr. Chief Justice, and may it please the Court. The Living Individual Clause of 15 U.S.C. 1052c is consistent with the First Amendment. To begin, I'd like to emphasize three points. First, Section 1052c imposes a condition on a federal benefit, not a restriction on speech. Even if Mr. Elster cannot register the mark Trump too small, he can sell shirts with that slogan. He can also obtain the benefits of federal trademark registration for those shirts by choosing a different source identifier. The Living Individual Clause simply restricts Mr. Elster's ability to assert exclusive rights in another person's name. Second, Section 1052c is viewpoint neutral. To apply it to any particular trademark, the PTO simply asks whether the mark refers to an identified individual and whether that individual has consented to registration. The agency need not and does not consider whether the mark is flattering, critical, or neutral with respect to the named individual. Mr. Elster's speculation about the circumstances under which identified individuals will or will not consent to registration cannot justify treating the provision as viewpoint discriminatory. Third, the fact that Mr. Elster's mark conveys a message about Donald Trump does not strengthen his constitutional claim. Granting registration here would likely reduce the overall volume of political speech since federal trademark registration provides enhanced mechanisms for the mark owner to restrict the speech of his competitors. The fact that this mark contains political expression is a further reason to hesitate before making those mechanisms available. I welcome the Court's questions. Mr. Stewart, if we agree with you, how would that affect copyright law? I think we would say that both trademark registration and copyright registration are federal benefits, but it wouldn't have to follow that exactly the same rules that would apply in one context would need to apply in the other. Clearly, that's true as a statutory matter. There are both federal trademark and copyright registration programs, but the statutory requirements are very different. And the same thing could be true of the Constitution. And I draw a rough analogy to the Court's traditional public forum jurisprudence. That is, even on locations like streets and parks, the ability to use government property for private communication is a kind of government benefit. But the Court has recognized that with respect to some types of government property, the tradition of making those fora available is so strong, so deeply rooted, that the government needs to show a good reason before it limits expression on a content basis. And the Court could reach the same conclusion with respect to copyright. The Court has described copyright as the engine of free expression. Its whole purpose is to promote incentives for creative, expressive endeavors. Trademark has a very different purpose. And to point to one instance, though, in which it's important to recognize that copyright registration is a government benefit, one of the requirements you have to satisfy in order to register your copyright is you need to pay a fee to the Copyright Office. And obviously that would raise huge First Amendment problems if it was a condition on engaging in the speech. The reason we don't think of it as problematic in the copyright registration program is that it's not a condition on the speech, it's a condition on the benefits that go with federal copyright registration. So the analysis would have to take into account the fact that it's a benefit program. But if the question is, can Congress exclude certain types of creative works from copyright protection based on their content, that would be an entirely different question. That would be something that really has no historical analog, and the Court in conducting the First Amendment analysis could take into account constitutional purpose, history, and tradition. But most of our benefits program cases involve money that the government gives to a particular grant or something like that. Now, in the case of trademarks, don't they, an applicant, also pay a fee as they pay in the copyright case? Yes, that's correct. It seems like an odd fit. It is not a program in which the government advances its own money, but that's not the only context in which the Court has distinguished between government benefits and the conditions on government benefits and restrictions on speech. I think you could analogize this program roughly to the Union dues cases, to Cornelius, which involved access to the combined federal campaign. In each of those instances, the government was not giving its own money to the participants, but it was providing logistical assistance that would aid the participants in trying to get money from other private people. And you can think of trademark registration in the same way. That is, the benefits of federal trademark registration are economic. Your trademark is placed on the principal register. Potential infringers are warned away from infringement because they understand that they risk potential liability if they use the same mark or a confusingly similar mark. If it does come to infringement litigation, then the owner of a registered trademark has certain presumptions available in litigation, and all of this is an economic benefit. So in a very general way, it's providing the same type of assistance as in SIRSA, in Davenport, et cetera. It is making it easier for one private party to try to get money from other private parties. Mr. Stewart, can I ask you, one of your three points was about viewpoint neutrality, and you say this is a viewpoint neutral regulation, and I think to some extent, at least facially, they agree. But there is this notion of the effect potentially having a viewpoint disparate impact, and I'm wondering whether and to what extent the government believes that there is any circumstance in which the impact could be taken into account when you're considering whether or not it's viewpoint neutral. I mean, I wouldn't say that there's no circumstance in the law in which impact would be taken into account. I would say it would be anomalous to treat a consent requirement as viewpoint discriminatory based on speculation as to when people will consent, and copyright is another example. As with trademark, under the copyright laws, the owner of a copyright can consent to conduct that would otherwise be infringing. That's obviously a feature of patent law as well. But is that just an argument about whether or not you believe the effect will actually occur? In other words, suppose we had data or something that indicated that they're correct, that the consent only occurs in one direction. Would that be relevant? Should we take that into account or what? I don't think it would carry the day at the end. I mean, we don't have the data, and I don't think there's really a reason to suppose that the withholding or giving of consent will depend on the nature of the message. One reason that either a trademark owner or a copyright owner might withhold consent is for fear that somebody else's speech will be misattributed to him. And the risk of misattribution is greater when you have a neutral or a flattering use of the mark. I mean, the one thing, presumably, if Donald Trump had been asked for his consent to registration here, the one thing he wouldn't have worried about is that if people saw this registered mark, they would think it reflected his own speech. And so we don't think there's a basis for believing there will be any systematic skew when people give consent. But above and beyond that, it would really kind of distort the application of both trademark and copyright law if we thought that a facially neutral requirement like consent can be treated as constitutionally suspect simply because the mark owners are more likely to consent in some circumstances than in others. And I'd point the courts to its decision last term and Jack Daniels as well. That is, the court decided some legal issues and it remanded for the lower courts to perform a likelihood of confusion analysis. And the court said Jack Daniels involved a parodic mark, a mark that parodied or mocked the original Jack Daniels mark. And the court said in conducting the likelihood of confusion analysis, the court can take into account that commercial entities are unlikely to mock their own products and therefore consumers will be less likely to think that a mark like this was actually produced by Jack Daniels than they might have been if the mark were more laudatory. And the court didn't suggest that because of that correlation between viewpoint and likelihood of confusion, the likelihood of confusion standard had been rendered viewpoint discriminatory or was constitutionally suspect. And that would really introduce havoc is too strong a word, but something like havoc into trademark law because likelihood of confusion is kind of the thing to be avoided in administering the trademark laws. Mr. Stewart, the extent of the government's authority to attach conditions to government benefits is a very difficult area of constitutional law and potentially quite a dangerous one. And as Justice Thomas pointed out, the situation here, maybe our precedent should be extended to cover this situation, but this is quite unlike any of the other cases that we have had concerning that. So my question is, if we don't agree with you on this theory, does that mean that you lose this case? I mean, you have another argument. I mean, I guess it depends on what you mean if we don't agree with you. If you think that this is the legal and constitutional equivalent of prohibiting Mr. Elster from selling shirts with the mark Trump too small, then we would say it's unconstitutional at least applied in that setting because we don't think that any government, state or federal, could prohibit Mr. Elster from selling those shirts. That is constitutionally protected expression. If you think that this is meaningfully different from a prohibition on speech, it is a condition on the federal benefits that go with trademark registration, but it still warrants heightened scrutiny. We would say it can satisfy heightened scrutiny under those hypotheses because here, I mean, it's not just a government benefit. The particular government benefit that Elster is seeking is enhanced mechanisms for restricting the speech of his competitors. I'm sorry to interrupt, but I just want to see if I understand your response to Justice Alito, and I may not. But if we put aside the emphasis on whether this is a government benefit and try and avoid writing a rule that might have ripple effects outside of intellectual property law, right? And we've been discussing, you know, this is quite unlike a lot of government benefits. And focus instead on history and what that informs us about the use of names in this context. There's a long historical tradition, right, of the living person name just as there is with geography and other things like that. There have always been content-based restrictions of some kind in this area. Is that enough for us to say to resolve this case in your favor, or do we need to? I think what Justice Alito is pressing at is to rule in your favor, do we need to go down this government benefits route? I mean, I think federal trademark registration dates back to 1870, so it's been around a long time. It hasn't been around since the founding. Well, there's common law before that, right? It's not like this came out of the ether. I mean, there certainly has been a long tradition of thinking of living individuals as having certain proprietary rights over their own names. And here the question is not just whether Mr. Elster can use Donald Trump's name, because he can. He can market expression that is about Donald Trump. The question is whether he can assert an exclusive right to use Donald Trump's name and prevent his competitors from doing so. Now, another answer I would give to Justice Alito is an important limitation on our argument here is that Mr. Elster can sell shirts with the slogan Trump Too Small, and he can obtain federal trademark registration so long as he uses a different source identifier that meets the statutory criteria for registration. And that's an important limitation, because the court in recent decisions has, like AOC, has cautioned against conditions on government benefits that seek to leverage the government. No, your turn. Have at it. Keep going. I suspect we're headed in more or less the same direction. The word government benefits again came up, and I guess I'm just asking, if I look back to the common law of trademark, and if I look back to the earliest trademark statutes, I see a lot of what we've now maybe described ahistorically through our First Amendment lens as content-based. There are restrictions about geography, merely descriptive things, and living persons' names. Those have always been areas where there's been some limitation on the ability to trademark. And I guess I'm asking, why not just look to the history here and see whether historical evidence comports with this being a First Amendment liberty or not? Why do I need to go down this – because the government gives it to you, it can do whatever it wants with you – road. And it's a very difficult and fraught road, and we have unconstitutional conditions, doctrines, and a million other things in this area. And I'm just not sure why I need to tangle with any of that. I mean, certainly if the court feels that the historical evidence is sufficient to decide the case in our favor, we – We don't object to that. We don't object to that. Just checking. But doctrinally, if we're looking at which box to put it in, in terms of First Amendment categories, isn't it – I mean, several of us in prior cases have said it's analogous or maybe analogous to the limited public forum doctrine. I think Justice Alito's opinion with the Chief Justice and Justice Thomas and Breyer said that in the Tam case, and Justice Sotomayor said that in the Brunetti case. Isn't that the box that if you're going to not rely solely on the history, but in terms of the doctrinal box, that's the one that's the easiest fit? I mean, I think there is an analogy in that both trademark registration and the provision of a public forum provide forms of government assistance that may be useful for communicative activities but are not in any way essential for speakers. The only reason I hesitate to embrace the analogy further is that the principal register, for instance, the official PTO publication on which all the registered marks are listed, it's really not – having your name put on that is not a way of communicating to the public. It is a way of warning potential infringers that they risk liability if they use the same or confusingly similar marks. Well, if we wanted to go down this road, and I think that the two are related, limited public forum and government assistance, in much the way that Justice Sotomayor wrote in her dissenting opinion in Brunetti, but if we were to go down the limited public forum road exclusively, why wouldn't we just say the registration program is the forum? It's not the register, it's not the book that's the forum, but the registration program is the forum, much like in Christian legal society the student activities program was the forum, a metaphorical forum, if you will, but that's what we said. It's in CLS. I mean, I think that would produce the right result because we do think that the legal standards that apply to limited public forums are the same as the legal standard we would ask the court to apply here, and here it's viewpoint neutral. The government is saying that certain types of marks can't go on the registry or the principal register, but it is not singly out marks based on viewpoint. It is not requiring registration in order to speak the marks. I guess the two other points I would make are, for First Amendment purposes, the dispositive question is, is this an abridgment of speech? And so to the extent that the court thinks it's not an abridgment of speech, we're not quite sure what it is, then we should win on that basis. Isn't that the bottom line? I know it's almost as if we're becoming straitjacketed by labels. Instead of looking at this as I do from first principle, the question is, is this an infringement on speech? And the answer is no. He can sell as many shirts with this saying, and the government's not telling him he can't use the phrase, he can't sell it anywhere he wants. There's no limitation on him selling it, so there's no traditional infringement. Government action always has to have a, quote, rational basis. The question then in my mind becomes, is there a rational basis for the government's activity here? And clearly, for all the reasons Justice Gorsuch pointed out, that this type of program depends on content, and that these kinds of limitations have been historically accepted, there's certainly a rational basis for the government's actions. Now, to the extent that it might involve speech, one could analogize, but I don't think you have to call it a government subsidy or call it a limited public forum. Both approaches come out to what is reasonable in this context. And that's the test you state at page 28 of your brief. You need only have a reasonable basis for what you're doing. And we don't actually talk about it in those terms in rational basis review, but isn't that the bottom line? Yes. So we don't have to analogize it to one or another. We just have to figure out, is this speech? And say, no, it's not speech that's being restricted. And then look at it in the traditional lens of, is it rational basis and is it reasonable? And what I would say, and I think this is just a different way of making your same point, is we don't think that the government subsidy cases and the nonpublic forum cases and the union dues cases are kind of discrete exceptions to the First Amendment. Rather, they are illustrative of a general principle that often the withholding of government assistance to speech will not constitute an abridgment of speech. Assuming there's a reasonable basis. Assuming there's a reasonable basis. And I'd also add the point that I was making earlier, assuming that the government is not trying to leverage the benefits of the program to coerce speech outside the program. And so if the statute said, when you sell T-shirts with a mark like Trump too small, you can't get any trademark for those shirts registered, even if the trademark you choose, like Elster Apparel, would otherwise meet the statutory requirements for registration. But you acknowledge, I think, that there may be, the government benefit, even if it's properly characterized as a benefit, may be so significant that your analysis would not hold. I think there could be cases like that. And the point we would make in response to that concern is, whatever circumstances that might arise, this is not one of those. Because if you imagine two T-shirts, each of them says Trump too small across the front, and at the back collar, one of them has a tag that says Trump too small, and one of them has a tag that says Elster Apparel. The communicative value of the shirts is just the same. It is not in any way essential to Mr. Elster's expressive efforts that he adopt Trump too small as a source identifier, that he adopted as a trademark. As long as he can use the expression, and as long as he can obtain the benefits of trademark registration by choosing a different source identifier to distinguish his goods from others, he has all he needs. So I think, yes, the court could reserve the question, how would the analysis work if a particular plaintiff could show that his expression just won't be successful unless he can adopt a particular term as a source identifier, because that situation isn't presented here. Mr. Stewart, I'm concerned about the copyright context. So can I just ask you to revisit your conversation with Justice Thomas? So tell me how you think the analysis would play out. Let's imagine that there's a similar restriction for copyright, and somebody wants to write a book called Trump Too Small that details Trump's pettiness over the years and just argues that he's not a fit public official. Are you saying it would be like a rational basis standard for analyzing whether that copyright restriction was permissible? Well, it would depend on what specific statutory restriction did Trump Too Small run afoul of. Clearly, if you had a provision of the Copyright Act that said you can't get a copyright on a book that is critical of a government official or former government official. No, you just can't use a name, a living person's name without their consent. You can't write the book. You can write the book, but you can't get copyright. I'm not prepared to say just what the answer would be, but I am prepared to say nothing follows necessarily from our position in this case with respect to that hypothetical law. That is, you can recognize that both are government benefits. But what analysis would apply? If we say rational basis or reasonable basis applies to this provision, just tell me what the analysis is. I'm not asking you to say whether you think it would survive it or not. Just tell me what analysis. How would we approach it? Rational basis? I think you could say heightened scrutiny with respect to content-based descriptions in the copyright area on the theory that the nature of the government benefit program matters. And Trademark's purpose has never been to foster free expression. It has been to foster the free flow of commerce and to allow consumers to recognize which goods are manufactured by which merchants. Copyright, by contrast, has historically been viewed as the engine of free expression. The stated constitutional purpose of copyright and patent protection is to promote the progress of science. But, again, I guess are you saying that in that case, even though it would be a governmental, you know, that we would apply the governmental subsidy framework? I guess I'm still not understanding. I understand all the good reasons why we wouldn't want to restrict it there. I think you could say, or at least nothing you would say in this opinion would foreclose you from saying that copyright is more like a traditional public forum. That is, it is still a mode of government assistance, but the tradition of making that assistance available is so strong, so deeply rooted that different rules apply to the withholding of benefits, particularly based on content. And we would also say that, you know, as Justice Gorsuch has pointed out, there's a long history of content-based rules governing the registrability of Trademark, and there's no comparable historical tradition of the sort that you postulate. Thank you, Counselor. Justice Thomas, anything further? Justice Alito? Mr. Stewart, do you think that the constitutionality of this provision could be sustained on a theory similar to the one in San Francisco Arts and Athletics versus U.S. Olympic Committee? I don't really think so, because I think that was really not a provision of general applicability. That was intended to protect the trademark rights of a particular entity in a particular trademark, and there was a unique history and a unique motivation. Certainly some of the subsidiary things that the court said in that case would be relevant here. But the other difference is that in the San Francisco case, what you were dealing with was the actual imposition of a restriction on speech. That is, the consequence of giving the Olympic Committee exclusive rights in particular words was that other people who wanted to use the same words in their marketing activities couldn't use them. And what we have here is something different. We're not dealing with an infringement case. We're not dealing with the question, can Congress pass a law that makes it a source of liability for particular people to use particular words? Really, we have the flip side. The question is, can Congress refrain from giving people exclusive rights in particular marks? I said what I think about the government benefits theory in the Tal versus Tam, so there's no secret about that. And if your argument requires – if I could not vote to sustain this without saying this is the attachment of a condition to a government benefit or that it's analogous to the attachment of a condition to a government benefit, I mean, you don't need my vote to win your case. I'm trying to see if you have any argument that maybe you've just decided, well, Alito's a lost cause here. But whether you have any other argument, one that doesn't require me to accept either of those propositions. I mean, I'm not sure if this is fully responsive, because I do think at some level our argument in this case depends on the proposition that there is a difference between telling Mr. Elster you can't register the mark Trump too small and telling him you can't sell shirts with that slogan emblazoned across it. If you think those two hypothetical restrictions are one and the same, they are legal equivalents, then we don't think that we can persuade you because we don't think any government could prevent him from selling the shirts. I would – Okay, let me just ask one final question. What should one do? What should a justice or a judge do in a case in which the issue is the constitutionality of the federal statute and this jurist thinks that it might be constitutional under a theory other than the one that is advanced by the government in support of the theory? Should the statute be held unconstitutional under those circumstances, under the party presentation rule, or should it be held to be unconstitutional as applied in the case at hand? What should one do in that situation? I guess it depends in part on whether your objection is really to the theory or to the label. That is, in the following sense, if you agreed that there is a constitutional difference between refusing to register the mark Trump too small and prohibiting the use of the mark Trump too small on T-shirts, if you agree that there is a legal difference between the two but you're hesitant to characterize federal trademark registration as a benefit, we may still be able to persuade you because, as I said, the real question is whether this is an abridgment of speech. And for those purposes, at least part of the issue is, is there a difference between refusing registration and telling you you can't market the shirts? The one other thing I'd say about Tam is Tam was a case, as you recall, in which members of a musical group of young Asian-American musicians wanted to register the mark The Slants. And they wanted to use that mark because it had historically been used as a derogatory term for Asians. And they said, our goal is to reclaim and assert ownership of the mark. They wanted to show that they weren't cowed by derogatory treatment from others. I think in that case, they had a real argument that to express themselves fully effectively, The Slants had to be the official name of their band. It wouldn't be sufficient if they had adopted a more anodyne term as the official name and then had referred to themselves colloquially as Slants. And so Tam was really the rare case in which there was real expressive value in choosing a term as a source identifier rather than simply using it. Thank you. Justice Sotomayor? No. Justice Kagan? So, Mr. Stewart, in this context where the question is not can the government prohibit speech but instead has to do with the government declining to support speech, whatever you want to put, what labels you want to put on that context, we frequently talked about that it should be reviewable for reasonableness. And I guess what I want to ask you is whether you think reasonableness is the same as standard rationality review. Because as I look at the cases, reasonableness is definitely not heightened scrutiny, intermediate or strict, but when the court says we look for reasonableness, it tends to do a couple of things. It tends to look at the other expressive opportunities that a speaker has, and it tends to look at whether even though something is not viewpoint-based, there's a fear that official suppression of ideas is afoot. And so that doesn't seem like really rational basis scrutiny to me. It seems like, look, we understand that this is a sensitive area. We're not allowing viewpoint-based discrimination. We also want to look, even if it's not facial, is it sort of lurking someplace? We want to look at other expressive opportunities. So that's my question. I think you are right that there is that ambiguity lurking in the court's opinions. I think we would say rational basis is the right test, but I think we would also be comfortable with the court analyzing this under kind of a slightly more robust standard. If you think about the standard that an appellate court would apply, for instance, in asking whether a trial court's factual findings were reasonable or clearly erroneous, I think that's a little bit more than minimum rationality, but a lot less than heightened scrutiny, so we don't have a difficulty with that. The one thing I think the court should adhere to with respect to the rational basis standard is it shouldn't be trying to figure out what motivated individual members of Congress who voted to pass this legislation. It should be asking more in terms of are there reasonable justifications for this restriction. Thank you. Mrs. Campbell? Mrs. Barrett? Mr. Stewart, does your argument, and you've talked a lot about how this doesn't actually stop him from speaking because he can still speak even though he can't register the trademark. What if, does your argument depend on the validity of his mark under state law because this is where I'm going with this. He can't register this, but there is a speaker-based discrimination. Could Trump come in and register that trademark because obviously he can register it and he's giving his consent, and then that trademark be valid, and so it stops Elster from having T-shirts or signs or anything that says it? Well, I mean the limitation on Donald Trump's ability to do that is that unlike with patent and copyright protection where you can create the thing and exclude others from doing it even though you're just sitting on it, it is a core requirement for initial and continuing trademark registration and trademark protection that you have to assert at least the intent to use the mark in commerce, and then the PTO does periodic checks. Yes, because he wants to stop this, and so he does do it in commerce, but he does it in a very limited way. If he can satisfy the requirement of use of the mark in commerce, and he certainly wouldn't be barred by the living individual clause in assuming it was perceived as a source identifier, then yes, he could accomplish that in the way you suggest, but the crucial point would be he would have to use the mark in commerce. He couldn't just reserve it without using it. Would there be a constitutional problem then? I mean, I don't think so. For Elster? Well, I mean, then Elster can't sell this on T-shirts or, you know, I guess what I'm saying is if he then can't express the speech, put it on T-shirts, sell the T-shirts, sell mugs, whatever, is there any speech problem then because he doesn't have another mechanism even though he can't register the trademark of expressing his message? If this was properly registrable as a trademark, and that would require in particular that it be perceived by consumers as a source identifier, then I don't think that there would be a constitutional problem, and that's something like the same problem that arises in infringement litigation generally. That is, whenever you have an infringement suit, you're seeking to hold somebody liable for expression on his goods, and the justification is there's no First Amendment protection for false or misleading commercial speech, and if a particular combination of words or images has acquired trademark protection, is understood to be a representation as to the source of the goods, then you're putting the same words or images on your own merchandise as making an implicit representation that they were manufactured by somebody other than you. Now, whether there could be some as-applied constitutional claim on the theory that if this was all a ruse, if Donald Trump's only motive for obtaining trademark registration and then engaging in limited sales of the goods was to prevent Mr. Elster from selling them, I've never seen a case raising that fact pattern. Justice Jackson? I have two questions. The first is I'm interested in understanding more about the government's view of rational basis scrutiny and whether or not a more granular argument about it might take care of Justice Barrett's prior concern related to copyright. So if we started with where Justice Sotomayor does, you know, this doesn't restrict speech, so we have rational basis. I guess I'm wondering whether there aren't different formulations of rational basis. So on the one hand, you have, you know, is this reasonably related to some legitimate government interest? Or, I guess, in the limited public forum cases, we have reasonably related in light of the... or reasonably related to the purposes of the regime. And if we were to... if you, the government, adopts the latter formulation, I would think that that could be a way to distinguish the copyright circumstance from the trademark circumstance. I mean, if you wanted to write a limited holding that kind of went down that road and that focused on the particular restriction at issue here, what you could say is part of the rational basis inquiry here would be has Congress made a reasonable judgment that particular categories of words and images are not suitable as source identifiers? And with respect to the living individual clause, again, there's not a tradition that living individuals can control what people say... Right, that's the trademark regime. But in the copyright regime, would you have a different result because the purposes are different? Yes, I think you would say there... it is much harder for the government to justify withholding copyright protection for discrete content-based categories of speech, and it's particularly difficult to link those to the purposes of copyright. So it could fail rational basis in the copyright world on that basis is what I'm suggesting. Yes, I mean, again, you could achieve the end result that certain restrictions that would be constitutional in the trademark context would be unconstitutional in the copyright context either by applying a different standard of review or by applying the same standard but giving large weight to the distinct purposes of those two regimes. And the second question I have is I wanted to give you an opportunity to complete your answer. You were earlier talking about if we thought a heightened level of scrutiny did apply in this circumstance, that this would meet it. So what was the full reason why this would meet a heightened level of scrutiny? I guess just quickly, the two reasons are if you look at the mine runoff cases in which people are just trying to elevate their own commercial products by linking a distinguished individual's name to them, there's a strong justification for disallowing them exclusive rights in another person's name because there has been a historical tradition of people being able to control the commercial exploitation of their own name. And then the second thing is if you look kind of at the category of marks that express ideas about the named individual and treat that as a distinct category of marks, then the First Amendment interests really weigh in favor of this provision because what Elster is trying to get is an enhanced ability to prevent his competitors from using the same slogan. Thank you. Thank you, Counsel. Thank you. Mr. Taylor. Thank you, Mr. Chief Justice, and may it please the Court. The government's defense of the Names Clause, as the discussion so far this morning shows, begins and ends with its argument that the clause should be subjected only to rational basis review, not any form of First Amendment scrutiny. That is incorrect. For three reasons, the clause should be subjected to heightened scrutiny. First, the clause withholds valuable legal protections generally available to all trademark holders who pay the fee, including presumptive validity, protection against certain defenses, and incontestability, and it does so based solely on the applicant's speech. That selective content-based withholding of generally available legal protections is a substantial burden on speech. Second, the Names Clause leverages the registration system and its attendant rights and benefits to achieve a purpose wholly unrelated to the purposes of trademark law. Unlike the separate prohibitions on false association and marks likely to confuse or mislead, both of which are tightly connected to the purposes of trademark law and trademark registration, the government's interest in discouraging marks because they hurt the feelings of public figures has nothing to do with the purposes of trademark registration. Third, the Names Clause involves express speaker-based discrimination of the kind that lends itself to viewpoint discrimination. Under the clause, public figures may use their names on registered marks to express their own presumably positive views about themselves, but no one else can unless they get consent, and who is going to consent to a critical mark? These three reasons require rejection of the government's rational basis test, and once that test is rejected, the clause cannot survive. The sole interest that it sought to serve was protecting the feelings of famous people, but that is not a legitimate reason to burden protected speech, much less one that can satisfy scrutiny. I welcome the Court's questions. Mr. Taylor, could your client make the shirts or mugs or whatever he wants to make now without registration? He can, Justice Thomas. So what speech precisely is being burdened? The burden on speech is that my client is being denied important legal rights and benefits. What this Court has recognized four cases running now are important legal rights and benefits that are generally available to all trademark holders who pay the registration fee solely because his mark expresses a message about a public figure. Is there a distinction between being able to speak and being able to register that speech in some form? Well, Justice Thomas, I think there's no dispute, and at least I don't take my friend to argue otherwise, that the rights and benefits here are valuable. The entire registration system is predicated on the idea that they're valuable. It's why people go through the trouble of registering their marks. It's why they pay hundreds of dollars in registration fees, and often, many times, to obtain legal counsel to help them through the process. It's because they matter. Well, I understand that, but if your argument is that somehow your speech is being impeded, I think it would be good to know precisely how it's being impeded or burdened. So the way I would characterize it, our position is that when the government withholds important, generally available legal protections solely because of the content of the applicant's speech, that imposes a burden on speech because it effectively pushes them to use different words to receive equal status in the eyes of the law. And I think it's that kind of... I'm sorry, counsel. Your whole answer is making me think that you're just conceding the other side's point that this is a government benefit. Because you're not talking about stopping the speech. You're talking about not receiving government protection for activity that you would like to heighten protection for. It doesn't stop you from selling. It doesn't stop you from selling anywhere as much as you want. You're getting the benefit of stopping others from competing with you. That's really what you're telling us. Justice Sotomayor... Then I don't know why government subsidy is not the standard of review. Well, there's a lot in that question. I mean, what I'll say at the outset is I think this Court has recognized that these are important legal rights and benefits, and we're just using the same phrase that the Court has used. Now, that doesn't answer the question of what happens when those legal rights and benefits, which are concededly important, are withheld, even though they're generally available to all trademark holders... But they all come down to money, and that's what government subsidy is. Whether it was the church receiving money for its playground, nobody was stopping it from building its playground. It was just saying, I shouldn't be denied the money to do it here. I shouldn't be denied the benefit of money I can get by stopping others from using it. Well, I think in the example you just gave, Justice Sotomayor, if I'm remembering correctly, that's the Trinity Lutheran case. In which I dissent that she'll be careful. I think, well, fair enough. But I think in that context, it shows that that's the free exercise clause. It uses the word prohibit. And this Court has repeatedly held that the government may not expressly discriminate against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character without satisfying heightened scrutiny. What's your best case that would show that the government is prohibited from declining to subsidize expressive activity in a way that is not viewpoint-based? So there are many cases where we've said, even though this is a benefits case, you can't discriminate on the basis of viewpoint. But I don't know of any cases where we've said, you know, all this is is a benefits case. We're just declining to subsidize certain kinds of speech. And it's not viewpoint-based. The grounds for selecting the speech that you benefit and the speech that you don't has nothing to do with viewpoint. I think we've always allowed that. Well, I can't point you to a case that's precisely on all fours, Justice Kagan, but I was starting to sketch out what I think is one relevant... Because, see, I can cite many cases. I mean, I can say Finley and Cornelius and DeIrsa and Davenport and Regan and Christian Legal Society. All those cases are benefits cases where we've said as long as it's not viewpoint-based, government can select. Government can give the benefit to some and not the benefit to others. And you don't have any cases that go the other way. So I'll take those cases on directly. So those cases all involved monetary subsidies with the exception of the user fee cases, which, as you pointed out, Justice Alito, in your opinion and Tam, are really just categorically different for a number of reasons. Well, I don't think that they're categorically different. I mean, you take, let's say, Finley, where the question was monetary grants to artists. Do you think we would have come out any differently if the program was giving paintbrushes to artists or if the program was giving marketing advice to artists? No, I don't think so. But I think what distinguishes Finley is that the court called it a highly selective, competitive program. Money, government funds, it's a scarce resource. It's fungible. You can get private funding. Justice Scalia made that same point in his separate opinion. So it might be, Mr. Taylor, and I don't want to badger you or anything, but that you can find things about each of these cases that might be slightly different from your case. But what you can't find is a case that supports your proposition that when it's not viewpoint-based, government cannot make distinctions when government is only giving out a benefit and not restricting any speech. Well, I'm certainly happy to embrace the limited public forum analogy that I think has been the subject of some of these questions, because at the end of the day, I think it ends up in the same exact place as intermediate scrutiny, and if I could try to explain why. So two things are important about the limited public forum reasonableness test. The first is it's not rational basis. There's something more going on there. If you look at the opinions in Christian legal society on both sides, I don't think anyone on the court thought that they were engaging in rational basis review. So there's some assessment of whether the fit is appropriate, and some lower courts have likened that to intermediate scrutiny. I know your question earlier suggested that it's different, but I actually think that the reasonableness review and intermediate scrutiny are more alike than they're different, and neither one is rational basis. But the second point, and I think this is critically important in this context, is there's a nexus requirement that exists in the limited public forum set of cases. The question for the court isn't whether the restriction at issue is reasonable in light of any purpose, but in the light of the purpose of the forum. And even if you want to accept the idea that the forum here is not the government registrar, but the government registration system, I think the problem for the government is this clause really has nothing to do with that. Why are you saying that? I mean, Mr. Stewart just made a very robust argument about why this is advancing the purposes of the trademark regime. Well, the purposes of the registration system, Justice Jackson, you can see this in McCarthy, Section 19-2. The goal of the registrar is to make registration and use as coincidental as possible. Basically... No, but it's not just the reg... It's the trademark regime of which registration is a part. And trademark is not about expression. Trademark is not about the First Amendment and people's ability to speak. Trademark is about source identifying and preventing consumer confusion. And it seems to me that Mr. Stewart was making the point that by having a restriction on people trademarking living people's names, the government is actually furthering the interests of the trademark system because it prevents confusion regarding whether or not this is endorsed by the living person, this is the living person's thing. You can imagine a lot of circumstances in which having a trademarked name could cause confusion in the marketplace. So why is that not a rational basis for saying we won't allow people to trademark names? So you're absolutely right, Justice Jackson, that the purpose of trademark law in general and the purpose of the registration system, as the opinion of the court in the Jack Daniels case from earlier this year makes clear, is to ensure that marks function as trademarks, that is, that they function as source identifiers, and they're not likely to confuse or mislead consumers as to the source. You're totally right about that. That's the purpose of trademark registration and the trademark system more broadly. But what's so unique about this clause is there are other provisions of the Lanham Act in Section 2 that deal with the hypothetical that you just gave. You're just saying it's superfluous. That doesn't tell me it doesn't have a nexus to the purpose. Well, I think in analyzing whether the provision that is before the court is constitutional, I think it's appropriate for the court to take account of the practical effect that that clause has because if it's invalidated, then the government is still going to have ample tools at its disposal to ensure that marks are not registered if they may falsely suggest a connection between a product and living persons, if they're deceptive, if they're likely to confuse or mislead as to source, if they don't function as trademarks. In thinking about whether it's reasonable in light of the purpose of the forum, what Justice Gorsuch was saying earlier about the historical roots of this kind of restriction on use of a living person's name would seem relevant, and it's been around in federal law for a long time as well. How do we assess that as reasonable in light of the purpose of the forum? It's pretty vague. History often informs tests like that in the history here to suggest that something like this is appropriate. Well, I think if... I'm not aware of history before the Lanham Act that would show that, so if what Your Honor is suggesting is... Well, let me help you out. Sure. I don't... In common law, there's a long and robust history about restricting names. Now, sometimes they took on secondary meanings, like Brooks Brothers, right? But that was pretty rare. And trademarks always had some content-based restrictions if you want to use that kind of abstract heuristic. Geographic names, descriptions, functions, generally, always exceptions, generally not trademarkable. And I guess I'm kind of stuck where my friend down the bench is. You know, we can put whatever abstract labels around a limited public forum, content-based, but at the end of the day, it's pretty hard to argue that a tradition that's been around a long, long time, since the founding, you know, common law-type stuff is inconsistent with the First Amendment. Now, it might be the case. It can happen. But you've got to come up with a pretty good argument, right? I think you're right, Justice Gorsuch. And if it's true that there's a robust historical record, it hasn't been, you know, injected into this case by the government, but if it is true that that kind of robust historical record exists, I do think that that could be a justification for the law. I actually think it would be a justification for the law even under heightened scrutiny. And I think, you know, that same historical foundation would underlie a lot of the provisions of the Land Act. You really know that trademark, I mean, not just names, but other content-based things like geography, function, description, those have always been restricted. Yes. For a very long time. I think that's right. And so, to the extent that what the registration system is doing is just tracking the substantive common law of trademarks that predated the Land Act and has been with us for a very long time and is still with us, then I don't think there's a problem. I don't think there's a problem under heightened scrutiny. I think those are going to sail through. They've got the historical justification, but they also ultimately are designed to facilitate two core purposes of trademark law, which is ensuring that marks, in fact, function as marks and that marks are not likely to give rise to confusion or some risk of deception as to the source of the mark. And as I read all the other provisions, save for maybe one... Well, and sometimes we also say, I mean, a trademark is a monopoly is what it is. It's a state-granted patent, old-fashioned patent monopoly. And some things you're just not allowed to monopolize. And for whatever reason in history, it's said, well, you don't get to monopolize geographic names. You don't get to monopolize descriptions. That's enough, isn't it? Just enough in and of itself. So I think there's a separate provision of Section 2 that deals with that just discourse. So if you look at subsection E, I think it's the fourth one, marks that are primarily merely a surname are barred from registration. And if you want to overcome that barrier, you've got to show that it's acquired a kind of secondary meaning or distinctiveness. It's why the former... Brooks Brothers. Exactly, exactly. And if you can do that, then what you're showing is that that mark actually functions as a mark and it gets rid of the concern about it. And I don't mean to pick on them, but that is an old case.  Counsel, what do you do about the government's argument that you're the one who's undermining First Amendment values because the whole point of the trademark, of course, is to prevent other people from doing the same thing. So if you win, you know, the slogan Trump too small or whatever, other people can't use it, right? Other people can't use it as a source identifier of their own, which I think is perfectly... But they can't use it the way you want to use it. And you say the way you want to use it is to engage in expression. And so... And then the trademark, there's things that are kind of close to it that are also prohibited, right? So we'll have all sorts of litigation. Presumably, there'll be a race for people to trademark, you know, Trump do this, Trump do that, whatever. And then, particularly in an area of political expression, that really cuts off a lot of expression other people might regard as important infringement on their First Amendment rights. Yeah, so a couple of points on that, Mr. Chief Justice. I take the concern and I think it's a fair one. I think a lot of that concern is dealt with by the requirement that a mark actually function as a mark. That means it's got to bring to mind, you know, in the mind of the consuming public, that it functions as a source identifier. It's not just expressing a common message. It's why God bless the United States or I heart D.C. Those kinds of marks don't generally get registered. And I think that in the main, many political slogans do not get registered for that very reason. And I think it addresses a lot of those concerns. So what we have to imagine is a mark that functions as a mark, and so it's kind of distinct enough and unique enough to kind of serve that purpose and satisfies all of your... Well, let me just, sorry to interrupt, but if yours meets those requirements, it's hard to see what the limitation would be on all sorts of other things, except to the fact that they think it's, you know, whatever they think is a parody or a joke. And you can certainly find most adjectives and attach them to your phrase. And, you know, all those would be protected and only a limited number of people would be able to make the, you know, particular comical expression, but carrying First Amendment weight that you want to arrogate to yourself here. I think to some degree, Mr. Chief Justice, that is just built into the regime. And so I understood my friend in his responses to your question, Justice Barrett, to effectively concede that the reason why if the PTO were to register this mark had the former president sought registration of it, the reason why that wouldn't give rise to First Amendment concerns is because of what this court said in Jack Daniels, which is that the First Amendment and trademark law, when it sticks to its historical function, they play well together. Now, I understand the concern about there being some chilling effect that might exist because, you know, someone doesn't want to pick a mark if they're concerned about being subjected to infringement litigation. And to some degree, that risk exists even without registration, but I understand that, you know, when a mark is registered, it gives the mark holder added benefits. I think if that is a concern that Congress wanted to identify, which we're a world from that here with this provision, which it was clear from the record that Congress was trying to make it so that no one used these marks, not that so anyone could use it as a source identifier. But if Congress did identify that as a problem, I think it could try to achieve that narrow purpose through a more narrowly drawn statute, but that's just not the statute that we have here. I'm sorry, more narrowly drawn like what? Well, I think if the concern is ensuring that political speech or, you know, political speech that might not give really scream source identifier anyway, that we don't want to register those kinds of marks because there could be some chilling effect. That could be a justification once you're in heightened scrutiny for a particular prohibition, and maybe it would, you know, survive. Maybe it wouldn't. I'd have to see the justification. I think that's the beauty of intermediate scrutiny. You don't just assume an exception is constitutional. You see what the government says, and then you see if it stands up. But I... Is it possible that you can't draft it without making it viewpoint content? I think you could probably... That's what the problem I'm having with your solution, which is it hinges on being viewpoint. I think you could draft that statute in a... I mean, it would be content-based. These are all content-based. But it wouldn't... I don't think it would be viewpoint-based. It might be a hard line to draw, as, you know, some of this court's decisions show. If you're trying to figure out what is a political message and what is not, you know, in a voting polling place, for example, that can be a hard line to draw. But I think here, you know, we... You know, it's really in Congress's court if it thinks that's a problem, it can address it. You know, Mr. Taylor, suppose Congress... Excuse me. Suppose Congress passed this law. It says because each living person has a trademark right to his or her own name, nobody can register a trademark containing the name of another person without obtaining that person's written consent. Would that be constitutional? Well, it would be content-based, and so we think it would be subject to intermediate scrutiny. I think there'd be less of a concern about leveraging if Congress was legislating on the understanding that someone had a trademark right in their own name. But I'd ultimately have to see the justification to see if it could survive. I mean, if we're talking about... Do you mean the intent of Congress is when you talk about the justification, the reason for the sponsor sponsoring this, the reason why the majority of both houses voted for it? Is that what you're saying? I'm not suggesting, Justice Alito, that you would examine the legislative history to try to determine the motivations of particular legislators. Just to respond to that concern, I would just underscore that we're not here with just a couple of floor statements. We've got the text on our side. All right, well, let's put the legislative history aside, and let's say we know nothing about this provision other than what it says on its face. It says each living person has a trademark right to his or her own name, and therefore you can't register somebody else's name without that person's consent. Would that be constitutional? If Congress were right about everyone having a trademark in their own name, even if they didn't use it in commerce... Well, what if Congress says that they do? I think it would present a closer question. I think you might, if you were to analyze that under a reasonableness standard, and there was some real barrier on using someone else's name as a trademark regardless of whether it were registered or not, I think that would be a very different question because what's going on there is Congress is not trying to leverage the benefits of the registration system to do something that it can't do directly, which is to discourage people from selecting marks that are valid marks simply because Congress doesn't like the message conveyed there. And I think that is what is going on here. Do you think it's far-fetched to think that every person has an interest, almost a quasi-property interest in his or her own name? Not at all. And I think that's why there's an expectation... Can Congress then protect it by saying somebody else can't take that away, in part, by registering a trademark that uses another person's name? I think that Congress has already tried to do that with the separate surname provision that I was mentioning earlier. It's trying to ensure that, if everyone has the strong intuition we all have, that we have an inherent property right in our own name and the ability to commercialize it, that you want to ensure that someone's not just going to rush to the registrar to register the mark, you know, Bob Smith, and then... Well, are you saying that this provision would be constitutional if subsection C would be constitutional if subsection A didn't exist, but because A exists, C isn't constitutional? I think that you have a question about fit at that point. So if 2A didn't exist, then 2C, in our view, would extend to prohibit marks that we think could properly be prohibited because they would be misleading or falsely suggesting a connection with someone when that connection doesn't exist. And so then the question would be, just did Congress go too far to deal with that problem? It would be an intermediate scrutiny question or maybe a reasonableness question that would probably filter out in the exact same place. But I think when you're assessing a particular law, you want to look at the practical effect. And so in the HIV-AIDS case, you know, the unconstitutional conditions case, there was a separate prohibition on using the money for certain purposes. And the court said, well, assuming... Because that provision already exists, we're going to look at this other provision, this loyalty oath provision, and, you know, it's got to be doing something more. And then we're going to analyze that something more that it's doing to see whether it's constitutional. And I think a similar analysis would be appropriate here. And I think once you recognize that even if you were in reasonableness land and most of these other provisions are going to sail through because they're consistent with the history and because they're ultimately just trying to ensure that trademarks function as trademarks and that they don't confuse and mislead consumers, then we're really just talking about one or two provisions that might have a purpose that's wholly disconnected from the purpose of trademark law. And I think what's so unusual about my friend's argument on the other side is that if the test is reasonableness for restrictions that are related to trademark law and the purposes of trademark registration, it's quite anomalous that for purposes that are totally unrelated, if the test is reasonableness for that, that for unrelated purposes where Congress is trying to leverage the benefits of trademark registration, you would have a lower standard, rational basis. That's exactly backwards. I think if Congress is trying to assert some justification that is outside the purpose of trademark law, whether it be dignity or a concern about, you know, just people having a commercial interest in their own identity apart from whether it's a trademark or not, I think it's only fair that the government try to show that that's a substantial interest and that the fit is reasonable, and that looks a lot like intermediate scrutiny to me. So I think it's... Maybe this is a flaw in intermediate scrutiny more generally. I don't really know what that means other than is it reasonable? What's the difference? Well, this Court has used different... has sort of put the test differently in different cases. I know the formulation. Yeah. I just thought, I mean, in the end, Congress thinks it's appropriate to put a restriction on people profiting off commercially appropriating someone else's name, and it's just a score such as detail. That's long been Congress's view, and even before this statute has been part of the law, and that, you know, we just have to make a judgment. Is that reasonable? I don't know if throwing the term intermediate scrutiny around does nothing for me. I think that's fair. What I would say is that whether it's reasonableness or intermediate scrutiny, I think it's really the burden should be on the government to try to justify the law. I don't think... Well, I mean, I guess I've just said it, and others have said it, so I won't belabor it, but a judgment that you shouldn't be able to profit off use of someone else's name. Yeah, I'm just saying that I think there's, you know, really a burden on the government. Yeah, it might... I think what's so unusual here is the government hasn't really tried to show why, you know, what the justification would be, what real-world harm is sort of being worked by the registration here, as opposed to the use of the trademark, which, as I understood my friend to concede, you know, this is perfectly appropriate to be used as a mark, and, you know, if the former President Trump were to bring a right of publicity action against my client, that that would fail on First Amendment grounds. And so what I would say is that the government doesn't have a legitimate interest in facilitating the unconstitutional application of state law, and I think that's the great many, you know, sort of applications of this statute once you take into account all these other provisions that exist. And so if there is a historical foundation, I do think it's incumbent on the government to identify one. We brought this case as an as-applied challenge, so we're willing to give the government another crack at it, another case to try to show that record. The only relief we've sought here is as-applied relief. Can you just say a little bit more about your viewpoint argument? I mean, do you have data that indicates that the proportion of marks that are rejected under names that are critical is different than, you know, those that are complementary? I don't have data, Justice Jackson, but what I can say is that the government has identified no example of a critical mark ever being registered, and we know we put a few of them in our brief. We know there are positive marks that have been registered, and so... But doesn't that have to do with consent? And the question is, do you have data related to people not consenting to... or people only consenting to complementary versus critical? I mean, I thought there were a couple of examples here where even complementary marks were rejected because people didn't consent to them. There are certainly quite a few examples. There are a lot more that exist in the government brief. Then how do we know that this is going to ultimately work, a viewpoint weeding out only critical marks? I thought that was your argument. Oh, no, to be fair, our argument is not that this is viewpoint-based in the same way that the laws in Tam and Brunetti were viewpoint-based. We're making the more modest argument that the fact that this is expressly speaker-based, that it gives rise to viewpoint-based concerns, so it's the kind of speaker-based restriction that you should care about, that that is another reason, in addition to the first two reasons I gave, the kind of available-to-all-comers rationale selectively being withheld. Right, so does it actually give rise to viewpoint? My question is just what are the viewpoint-based concerns, and are they real? Well, I think, as this court pointed out in Jack Daniels, I mean, you know, self-mockery with trademarks is quite an unusual thing, and I think it's just a matter of common sense whether someone would consent to a derogatory use of their name on a trademark, and that that's not likely to occur. I know of no example of that occurring, and on the other hand, I can point to examples of positive marks being registered, and so I think that that disparity is just part of the equation here. We're not saying that it's categorically unconstitutional for that reason alone. We're just saying that is one plus factor that this court should look to in assessing whether rational basis outside of strict viewpoint discrimination is permissible, and I think, you know, in the ordinary case, this court doesn't have to parse the distinction between a content-based law that is viewpoint-based and a content-based law that is not viewpoint-based because it gets strict scrutiny either way. Thank you, counsel. Justice Thomas. Justice Alito. Ms. Gorsuch. Justice Kavanaugh. Thank you, counsel. Thank you. Rebuttal, Mr. Stewart. Thank you, Mr. Chief Justice. Mr. Taylor referred to the fact that in order for words or images to be registered by the PTO, they have to function as a trademark, as a source identifier, and the existence of that unchallenged requirement just highlights the fact that this is not a restriction on speech. Imagine that Congress passed a law saying the only words and images that you can put on your products are words and images that function as trademarks, that identify the source of the merchandise. That would raise huge First Amendment problems because it would prevent merchants from conveying a range of useful information to potential consumers. The reason we don't think of that restriction as raising First Amendment concerns is we understand it doesn't prevent you from putting the words on your product. It just prevents you from getting registration. Mr. Taylor also said that other provisions of the Lanham Act, restrictions on marks that falsely suggest a connection to persons or to institutions and marks that are misleading as to source, that those restrictions would prevent the registration of marks that falsely imply an endorsement. I just identified three types of scenarios in which those might be inadequate to fully protect the historically rooted idea that individuals have a property-like right in their name. The first is that when the PTO applies those provisions, it looks to what the average consumer would think. Cases could certainly arise in which the average consumer might think there's no mess of endorsement applied, but the living individual might think some people are going to misattribute this to me and I don't want any of it. The second scenario and I'd use as a hypothetical, imagine a car dealer in New York uses as his slogan the Derek Jeter of car dealers. He explains, I'm not claiming that there's any affiliation with Derek Jeter. All I'm saying is I perform my own job with the same excellence and professionalism that New Yorkers have come to associate with Derek Jeter. We could accept the explanation and Derek Jeter could still think I'm offended by the idea of someone with whom I have no connection attempting to profit by linking his own products to my name and my good reputation. He could worry if this person can call himself the Derek Jeter of car dealers, next there will be the Derek Jeter of orthodontists and the Derek Jeter of barbers and the value of his name will be reduced, will be diluted. And the third scenario is what I might refer to as the true suggestion scenario where the Los Angeles Lakers describe their product as Jack Nicholson's favorite team or the Chicago Bulls describe their product as Barack Obama's favorite team or a restaurant in which a senator has had dinner uses the slogan, Senator X ate here. None of those would really be excludable based on the false suggestion clause because they would imply a connection between the living individual and the product but it would be a connection that actually existed. And so nevertheless there is a strong tradition that individuals can exert control over their own names to a degree necessary to prevent those uses from occurring. Now it's true denial of registration under the Lanham Act doesn't prevent the hypothetical businesses from engaging in those marketing activities. In order to accomplish that the plaintiffs would have to rely on state law rights of privacy and publicity but with respect to trademark registration Congress did what it could. It denied any additional oomph that would be provided by federal registration to marks that deserve living individuals in that manner. Thank you. Thank you Mr. Stewart. You linger at the podium just for a moment. Our records reflect that this is your or was your 100th argument before the court. You are the fourth person to reach this rare milestone this century. Throughout your career you have consistently advocated positions on behalf of the United States in an exemplary manner. I recall one case in particular from my days in private practice 23 years ago in which I was counsel for petitioner and you argued in support of respondent. Now when the opinion came down I was just 9 votes short of a unanimous result for my client. On behalf of the court I extend to you our appreciation for your advocacy before the court and dedicated service as an officer of this court. We look forward to hearing from you many more times. Thank you very much Mr. Chief Justice.